# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

GEORGE MCCLURE,

               Plaintiff,

     v.

C. K. CHEN, et al.,

               Defendants.

1:14-cv-00932-DAD-GSA-PC

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT BE GRANTED (ECF No. 47.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

Plaintiff George McClure ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on June 4, 2014. (ECF No. 1.) This case now proceeds with Plaintiff's First Amended Complaint filed on February 9, 2015, against Defendants C. K. Chen (M.D.) and C. Horton (Physician's Assistant) ("Defendants") on Plaintiff's medical claim under the Eighth Amendment. (ECF No. 12.)

On March 25, 2016, Defendants filed their first motion for summary judgment, on the grounds that: (1) Plaintiff fails to state a claim for medical deliberate indifference under the Eighth Amendment; (2) Plaintiff failed to exhaust administrative remedies prior to filing suit; and (3) Defendants are entitled to qualified immunity. (ECF No. 28.) On

1

November 21, 2016, findings and recommendations were entered, recommending that Defendants' motion be granted, based only on Plaintiff's failure to exhaust administrative remedies.[1]  (ECF No. 42.)  On March 28, 2017, the district judge found that Plaintiff had exhausted his remedies, declined to adopt the findings and recommendations, and denied the motion for summary judgment.  (ECF No. 46.)  Defendants were granted leave to file a second motion for summary judgment addressing these issues.  (Id.)

On April 18, 2017, Defendants filed their second motion for summary judgment.  (ECF No. 47.)  On July 17, 2017, Plaintiff filed an opposition.[2]  (ECF No. 52.)  On August 7, 2017, Defendants filed a reply to the opposition.  (ECF No. 55.)  Defendants' second motion for summary judgment is now before the court.  Local Rule 230(*l*).  Defendants move the court for summary judgment on the following grounds:  (1) failure to state a claim for medical deliberate indifference under the Eighth Amendment, and (2) qualified immunity.

For the reasons that follow, the court recommends that the motion be granted.

## II.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence

---

[1] Because the court found that Plaintiff did not exhaust his administrative remedies, the findings and recommendations did not proceed to address Defendants' other arguments concerning the merits of the case nor qualified immunity.  McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002) (A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits).  (ECF No. 42 at 13:23-27.)

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 47-1.)

or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

III.    SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[3]

Plaintiff is currently incarcerated at the California Institution for Men in Chino, California, under the custody of the California Department of Corrections and Rehabilitation.

---

[3] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

The events giving rise to this action allegedly occurred at Kern Valley State Prison[4] (KVSP) in Delano, California, when Plaintiff was incarcerated there.

Plaintiff alleges the following. Plaintiff is an epileptic with a long and documented history of seizures. Upon arriving at KVSP, Plaintiff informed medical staff of his medical needs and had a discussion with the screening nurse. Under CDCR's medical policies, epileptic inmates are not housed upstairs due to the seizures and obvious dangers of placing these inmates on an upper tier or upper bunk. Plaintiff has a lower tier/lower bunk chrono that prohibits staff from housing him illegally. However, Plaintiff was housed on an upper tier.

Plaintiff suffered a fall, causing a serious head injury and loss of vision in his left eye. Plaintiff submitted two or three medical requests to be seen and correct his living situation. Plaintiff saw Physician's Assistant Horton, but nothing was done to abate the danger Plaintiff was in. Defendant Horton did not remove Plaintiff from his housing, and Plaintiff was not given any consultation with another staff member to be removed from harm's way.

Plaintiff then saw Doctor C. K. Chen, who is Plaintiff's doctor. Plaintiff informed Dr. Chen of his injuries. Dr. Chen did not have any tests or x-rays done to evaluate Plaintiff's condition, did not order any specialist to diagnose Plaintiff's condition, and did not provide anything for Plaintiff's pain. Most importantly, Defendant Chen did not remove Plaintiff from his dangerous housing situation. Dr. Chen told Plaintiff to go back to his cell and come back in six weeks.

Once Plaintiff finally saw a specialist, the specialist ordered an urgent consultation with an eye surgeon. Defendants denied Plaintiff the necessary eye surgery requested by the eye specialist. Had Plaintiff received the surgeries he required he would have his eyesight. Instead, long delays and refusals to treat caused Plaintiff unnecessary suffering and loss of vision in his left eye.

---

[4] Plaintiff refers to NKSP (North Kern State Prison) in the First Amended Complaint as his place of incarceration during the events at issue. (ECF No. 12.) However, Defendants assert that Plaintiff was actually housed at Kern Valley State Prison in 2011, where Defendants Chen and Horton were both employed at the time. (ECF No. 5 n.1.) Plaintiff's medical records confirm that he was at Kern Valley State Prison (KVSP) when the events at issue occurred. (E.g., ECF No. 28-3 at 9, 14, 20, 21.) With this evidence, it appears that Plaintiff was actually incarcerated at KVSP during the relevant time.

Each of the Defendants was aware of Plaintiff's medical condition, because Plaintiff told them about it, and they had Plaintiff's medical file in front of them when speaking to Plaintiff. Plaintiff told them he could not see out of his left eye and had a serious head injury. Plaintiff told the Defendants he was being housed against medical orders, but nothing was done by either Defendant to remove him from a knowingly dangerous living situation.

It took over two months to treat Plaintiff, causing him to lose vision in his left eye. His last eye test revealed 3/300 vision.

Plaintiff seeks monetary damages.

## IV. DEFENDANTS' UNDISPUTED FACTS (ECF No. 47-2.)

Defendants submitted the following facts in support of their motion.

1. Plaintiff has a history of seizures. Amended Complaint, ECF No. 12, p. 6.

2. Plaintiff suffered a seizure on June 8, 2011, while incarcerated in Kern Valley State Prison (KVSP), after he did not to take his anti-epileptic medicine. First Level Response, Robinson Decl., Ex. B.

3. On July 28, 2011, more than one month after the seizure, Plaintiff suddenly began losing vision in his left eye. Chen Decl. ¶ 6, Ex. B. Robinson Decl. at Ex. B.

4. On July 28, 2011, Plaintiff was seen by Dr. Chen and that was the first time he told Dr. Chen about his eye or vision problem after the seizure. Dr. Chen conducted an eye examination on Plaintiff and referred him to a specialist. Chen Decl. ¶ 6, 12; First Level Response, Robinson Decl., Ex. B.

5. Plaintiff was seen by the ophthalmologist on August 10, 2011, who concluded that Plaintiff had a detached retina and recommended retinal surgery. Chen Decl.¶ 7; First Level Response, Robinson Decl., Ex. B.

6. Plaintiff was seen by Dr. Chen on August 11, 2011, who issued an urgent referral to have Plaintiff admitted for retinal surgery as soon as possible. Chen Decl. ¶ 7, Ex. C; First Level Response, Robinson Decl., Ex. B.

///

7.  On August 18, 2011, Plaintiff received an operation in his left eye, his retina was reattached.  Second Level Health Care Appeal Letter dated September 21, 2012, Robinson Decl., Ex. C, D.

8.  Plaintiff was examined and treated by multiple physicians at KVSP, as well as private physicians outside the prison, for his eye issues.  Chen Decl. ¶ 8.

9.  Plaintiff's vision improved for a period of time, yet could not be completely restored to what it had been before his seizure.  First Level Health Care Appeal Letter dated August 24, 2012, Robinson Decl., Ex. D.

10. Dr. Chen was not the physician who examined or treated Plaintiff immediately following the seizure.  Chen Decl., ¶ 5.

11. Horton was not responsible for examining or diagnosing Plaintiff for his eye injury.  Horton Decl. ¶ 10.

12. Before Plaintiff suffered the seizure on June 08, 2011, he was prescribed Dilantin, an antiepileptic drug, but he was not taking the Dilantin as required.  Chen Decl., ¶ 5, Ex. A, ECF No. 12, p. 6.

13. When Plaintiff expressed that his vision was blurred after the fall, Horton communicated that to the physician, who issued the physician's orders that day.

14  After his surgery Plaintiff received the eye drops he needed, and Dr. Chen is the one who ordered them.  Chen Decl., ¶ 11, Ex. F.

15. After July 28, 2011, Plaintiff was treated nearly every week with either medication, visits with prison physicians and specialists, or a combination of each.  Institutional Appeals Response Letters, Robinson Decl. at Ex. B, C.

16. As of June 6, 2013, Plaintiff had received a retinal surgery, ophthalmic laser treatment, and cataract surgery.  Chen Decl. ¶ 7-11; First Level Health Care Appeal Letters, Robinson Decl., Ex. D.

17. Plaintiff continued to receive surgeries and additional treatment for his eye over the next couple of years, even after relocating to another prison.  Health Care Appeals Letters, Robinson Decl., Ex. D.

## V. DEFENDANTS' ARGUMENTS

Defendants' evidence includes Plaintiff's allegations in the First Amended Complaint, the declarations of Defendant Chen, Defendant Horton, and Appeals Coordinator Robinson, Plaintiff's medical records, and Plaintiff's appeal records. Defendants argue that Plaintiff cannot establish that either of the Defendants acted with any deliberate indifference, as required to meet the burden under the Eight Amendment, or establish the basic causal connection between any actions of these two Defendants and his vision loss.

Defendants first argue that Plaintiff suffered the seizure at issue on June 8, 2011, because he chose not to take the anti-epileptic drug he was prescribed, Dilantin, as ordered. (DUF No. 12.) In a "Primary Care Provider Progress Note" dated June 16, 2011, about one week after Plaintiff's seizure, Plaintiff informed Dr. Chen that "he was skipping Dilantin…[and] had one seizure 2-3 weeks ago" as a result. (Chen Decl., ¶ 5, Ex. A.)

Next, Defendants argue that they were not responsible for Plaintiff's housing assignment. They assert that their duties involve examining and treating inmates for medical issues, not assigning them any particular housing assignment. (Horton Decl. ¶ 3; Chen Decl. ¶ 2-3.) Defendants assert that an inmate is assessed and placed in an appropriate housing assignment by administrative staff as soon as the inmate is admitted to the prison, (Horton Decl. ¶ 3; Chen Decl. ¶ 3), and Plaintiff admits that it is the institution that is responsible for correctly housing inmates once they are "initial[ly]" admitted (Amended Complaint, ECF No. 12, p. 9). Defendants also assert that Plaintiff cannot argue with any legitimacy that a new cell assignment would have cured his vision loss, and thus, the only actions relevant to the determination of whether Dr. Chen or Horton were deliberately indifferent to Plaintiff's eye treatment are the actions they took *after* Plaintiff's seizure – when the eye injury occurred – not before.

Defendants also argue that Plaintiff had already lost sight in his left eye before Dr. Chen had any notice of Plaintiff's vision-related issues. (DUF Nos. 3-4.) Following his seizure on June 8, 2011, Plaintiff was sent to the emergency room for further evaluation and returned to the prison. (DUF No. 2; Horton Decl. ¶ 5; Robinson Decl. at Ex. B.) Dr. Chen's notes from

Plaintiff's appointment with him on June 16, 2011, show that the appointment concerned lab work, specifically to address Hepatitis C, to receive more seizure medication, and for psoriasis, (Chen Decl., ¶ 5, Ex. A; Robinson Decl. at Ex. B), and it was not until June 28, 2011, that Plaintiff suddenly lost vision in his left eye, (DUF No. 3).

In addition, Defendants argue that Defendant Horton did not have the opportunity or responsibility to diagnose or treat Plaintiff for his vision loss, and there is no evidence that Defendant Horton had knowledge of or was involved in treating Plaintiff for loss of vision until it had already occurred. The first record, dated June 10, 2011, shows Defendant Horton present at 3:11 p.m., and about forty minutes later Plaintiff was prescribed Dilantin, but not by Defendant Horton. (Horton Decl. ¶¶6, 7, Exh. A.) Horton was asked to evaluate Plaintiff, but before he could begin the examination, the physician took over. (Horton Decl. ¶¶7-8.) The second record indicates that on August 17, 2011, the day before Plaintiff was admitted for retinal surgery, he met with Horton and Horton instructed Plaintiff to continue taking his medication. (First Level Response, Robinson Decl. at Exh. C; Horton Decl. ¶9.) Defendants argue that there is no evidence of deliberate indifference by Horton.

Defendants further argue that once Defendant Dr. Chen had notice of Plaintiff's vision problems, he took all appropriate actions within his power and got Plaintiff immediate medical attention. Defendants assert that the records prove that Dr. Chen referred Plaintiff to a specialist *and* ordered the immediate corrective retina surgery, then regularly followed up with Plaintiff and ordered urgent treatments on his behalf. (ECF No. 12, p. 8; Chen Decl., ¶¶ 6-9.) Plaintiff argues that Dr. Chen was deliberately indifferent because he did not diagnose Plaintiff with retinal detachment himself, but Dr. Chen claims that he does not have the training or tools to diagnose this type of internal injury, as it is beyond the scope of his knowledge as a general physician. (Chen Decl., ¶ 7.) Defendants argue that Plaintiff's claim that they denied him a necessary eye surgery is false; Defendants' evidence shows that as soon as Dr. Chen received results from the ophthalmologist on August 11, 2011, he issued an urgent order for retinal re-attachment surgery as per the ophthalmologist's recommendation. (ECF No. 12, p. 8; DUF 6, 7.)

Finally, Defendants argue that they did everything they could to treat Plaintiff's eye problem, but Plaintiff's vision could not be permanently corrected because of poor retinal function. Even after the surgery, Plaintiff had an advanced cataract in his left eye that affected his vision, and the retina did not function as it had before the detachment. (DUF No. 9.) Despite retinal surgery, ophthalmic laser treatment, cataract surgery, medications, and other follow–up care, the damage could not be completely reversed. (Id.; Health Care Appeals Letters, Robinson Decl. at Ex. D.)

## VI. DEFENDANTS' BURDEN

Based on Defendants' arguments and evidence in support of their motion for summary judgment, the court finds that Defendants have met their burden of demonstrating that they did not act with deliberate indifference to Plaintiff's serious medical need. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## VII. PLAINTIFF'S EIGHTH AMENDMENT MEDICAL CLAIM

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted), Wilhelm, 680 F.3d at 1122. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment,

the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997), (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## VIII.   ANALYSIS

Plaintiff's evidence consists of his allegations in the First Amended Complaint, Plaintiff's declaration, and the declaration of inmate Ira Don Parthemore. (ECF No. 12; ECF No. 52 at 11, 14.)

### A.   **Defendant Horton**

Plaintiff makes no argument in his opposition concerning his claims against Defendant

Horton. Thus, Plaintiff has not met his burden to submit admissible evidence showing the existence of genuine issues for trial with respect to Defendant Horton. Therefore, Defendants' motion should be granted as to Defendant Horton, and the court should enter summary judgment in favor of Defendant Horton.

## B. Medical Claim Against Dr. Chen

### 1. Objective Element – Existence of Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059. There is no dispute that Plaintiff presented with a serious medical need. Defendant does not dispute that Plaintiff meets the first prong of the test for deliberate indifference, because failure to treat Plaintiff's eye at all could have resulted in further injury. (ECF No. 47-3 at 6:1-4.)

### 2. Subjective Element – Deliberate Indifference

The court finds no evidence that Dr. Chen was deliberately indifferent to Plaintiff's medical need. Plaintiff's evidence shows that on June 16, 2011, he saw Dr. Chen about lab results and informed Dr. Chen of his eye condition, the pain he was suffering, and his worries about going blind. Plaintiff declares that:

> [O]n June 16, 2011, I had an appointment with Dr. Chen at which time I informed him of my blurring and deteriorating vision and asked for his help. Dr. Chen told me "not to worry," that it was "normal" after a seizure. I took his word as a medical doctor.

(Pltf's Decl., ECF No. 52 at 11 ¶3.)

Defendant Dr. Chen declares:

> I reviewed the CDCR 7230 "Primary Care Provider Progress Note" that I completed for inmate McClure on June 16, 2011. I regularly complete this document when noting my observations during an office visit. The handwriting on the form is mine, as is the physician stamp with my name on it, and my signature at the bottom. In this form I noted that the purpose of the visit was to review lab results as a follow-up to Plaintiff's continued treatment for Hepatitis C, psoriasis, and seizure medication. . . At no time during this meeting did Plaintiff indicate to me that he had lost vision or had eye issues, because I would have noted that on this document. At this time, I was not aware that inmate McClure was sent to the emergency room as a result of the seizure.

(Chen Decl., ECF No. 47-5 ¶5 & Exh. A.)

There are striking differences in Plaintiff's and Defendant Chen's accounts of the June 16, 2011, visit. Plaintiff contends that he informed Dr. Chen of his blurring and deteriorating vision and asked for Dr. Chen's help, which was not given. Dr. Chen insists that Plaintiff did not tell him about his eye issues, because Dr. Chen would have noted that on his medical report. These differences, however, do not create a genuine disputed material fact because neither version of the facts shows that Dr. Chen acted with deliberate indifference.

The court may not make credibility determinations or weigh conflicting evidence, but drawing inferences in favor of Plaintiff, the court finds no evidence that Dr. Chen knew that Plaintiff was at substantial risk of serious harm. Plaintiff states that Dr. Chen could easily see that Plaintiff's eye condition was serious because a general practitioner or nurse could have easily seen the seriousness of the eye condition. (ECF No. 52 at 2:27-3:2.) However, Plaintiff has not described what his eye looked like or what Dr. Chen could have seen that would alert him to a serious condition. There is no evidence that Dr. Chen examined Plaintiff's eye on June 16, 2011, or that Dr. Chen drew the inference that Plaintiff faced a substantial risk of serious harm without immediate treatment. In fact, Plaintiff's evidence supports the argument that Dr. Chen did *not* draw the inference, because Dr. Chen told Plaintiff that the condition of his eye was "normal" after a seizure and he should not worry about it. (Pltf's Decl., ECF No. 52 at 11 ¶3.) Plaintiff alleges that Dr. Chen told him the medical appointment on June 16, 2011, was only to discuss lab results, and that Plaintiff would need to submit a new Form 7362 (Request for Health Services) to be seen at a later date to discuss his eye problem. (ECF No. 52 at 2:22-25.) There is no indication that Dr. Chen was aware that a delay in referring Plaintiff to an eye specialist or in arranging for immediate surgery would be harmful. Therefore, the court finds no evidence that Dr. Chen acted with deliberate indifference to Plaintiff's medical need.

### 3. Injury and Damages

Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show the delay caused significant harm, and that the defendants

should have known such harm would occur.  <u>Hallett v. Morgan</u>, 296 F.3d 732, 746 (9th Cir. 2008).  Defendants argue that Plaintiff cannot demonstrate that the delay in his eye surgery led to further harm to Plaintiff.  The court concurs.

Plaintiff is not qualified to express a medical opinion about whether his eyesight after surgery would have been better if surgery had been performed sooner.  As a layperson, Plaintiff's medical opinion is not admissible.  Fed. R. Evid. 701.  Therefore, Plaintiff's opinion that he suffered lasting effects caused by Dr. Chen's conduct is not admissible.  Based on the admissible evidence, the court does not find that any conduct by Defendant Chen caused Plaintiff further harm.  Defendant Chen has met his burden of setting forth evidence that there is no genuine issue of material fact for trial, which shifts the burden to Plaintiff to show that a genuine issue of material fact exists.  Plaintiff has not done so.

### 4.  <u>Conclusion</u>

Plaintiff has not submitted admissible evidence showing the existence of a genuine issue of material fact precluding entry of judgment.  In sum, the record does not support a claim under the Eighth Amendment against Dr. C. K. Chen or Physician's Assistant C. Horton based on deliberate indifference to Plaintiff's serious medical needs.

## IX.    CONCLUSION AND RECOMMENDATIONS

The Court finds that Defendants have met their burden of demonstrating that under the undisputed facts, they are entitled to summary judgment against Defendants Chen and Horton. Plaintiff has not submitted admissible evidence showing the existence of a genuine issue for trial.  Therefore **IT IS HEREBY RECOMMENDED that** Defendants' motion for summary judgment, filed on April 18, 2017, be **GRANTED**, and that summary judgment be entered in favor of Defendants, closing this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be

served and filed **within ten (10) days** after the date the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 19, 2018**              **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE