UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE MCCLURE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>C.K. CHEN and HORTON,<br><br>　　　　Defendants. | No. 1:14-cv-00932-DAD-GSA<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND DENYING SECOND MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 47, 58) |

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On January 19, 2018, the assigned magistrate judge issued findings and recommendations recommending that defendants' second motion for summary judgment be granted. (Doc. No. 53.) These findings and recommendations provided the parties with fourteen days in which to file objections and ten days thereafter in which to file replies to the objections. On June 20, 2018, plaintiff filed objections to the findings and recommendations. (Doc. No. 68.) Defendants filed no objections and no replies were filed.

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Rule 304, the undersigned has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the undersigned declines to adopt the pending findings and recommendations.

1

In the pending findings and recommendations addressing defendants' summary judgment motion the magistrate judge noted that plaintiff and defendant Chen tell fundamentally different stories about when defendant Chen was first advised plaintiff was suffering from a loss of vision. (*See* Doc. No. 58 at 12) (observing that "[t]here are striking differences in Plaintiff's and Defendant Chen's accounts of the June 16, 2011[ ] visit"). Plaintiff has submitted a declaration signed under penalty of perjury recounting that he first advised Dr. Chen his vision was deteriorating at a June 16, 2011 appointment. (*Id.*; *see also* Doc. No. 52 at 11.)) Defendant Chen asserts, however, that he was not told during his June 16, 2011 meeting with plaintiff that plaintiff was experiencing trouble with his vision, and did not learn of these vision problems until July 28, 2011.[1] (Doc. No. 58 at 5, 12.) What was or was not said by plaintiff at the June 16, 2011 appointment with Dr. Chen is a factual dispute that this court cannot resolve on summary judgment.

The pending findings and recommendations conclude there is no evidence before the court on summary judgment showing deliberate indifference under the Eighth Amendment, because plaintiff "has not described what his eye looked like or what Dr. Chen could have seen that would alert him to a serious condition." (*Id.* at 12.)[2] However, on summary judgment, defendants do not dispute the objective component of deliberate indifference is met, because the injury to plaintiff's eye, a detached retina, was objectively serious. (Doc. No. 47-3 at 6.)[3] Concerning the

---

[1] Plaintiff promptly received medical treatment, including emergency surgery to repair a detached retina, shortly after this July 28, 2011 appointment with Dr. Chen. (*See* Doc. No. 58 at 5–6.)

[2] The findings and recommendations acknowledge that on summary judgment the court may not make credibility determinations or weigh conflicting evidence. (Doc. No. 58 at 12.) The undersigned finds that in reaching this conclusion, however, the findings and recommendations, essentially fail to adhere to that correct statement of the law.

[3] The Ninth Circuit has concluded that blindness in one eye is a serious medical need within the meaning of the Eighth Amendment. *See Colwell v. Bannister*, 763 F.3d 1060, 1066–67 (9th Cir. 2014); *see also Hanson v. Blaine County*, No. 1:16-cv-00421-BLW, 2018 WL 3370526, at * 5 (D. Id. Jul 9, 2018) ("A detached retina may constitute a serious medical need."); *Herrera-Cubias v. Fox*, No. 08-CV-0517-TUC-AWT, 2012 WL 12539503, at *4 (D. Az. Sept. 10, 2012) ("[C]ourts have held that a detached retina is a serious medical need because it causes discomfort, necessitates surgery, and can lead to blindness.") (citations omitted).

subjective component of his deliberate indifference claim, as noted above, plaintiff has declared that on June 16, 2011, he told Dr. Chen that his vision was blurry and deteriorating and asked for the doctor's help. (Doc. No. 52 at 11.) Dr. Chen refutes plaintiff's evidence and maintains he was not informed of plaintiff's vision problems until July 28, 2011 at which time point he immediately provided plaintiff medical treatment. Were a jury to determine plaintiff had indeed advised Dr. Chen of his deteriorating vision on June 16, that jury could also conclude Dr. Chen knew and appreciated the seriousness of plaintiff's eye condition at that time, as well as the risk posed to his vision. This is especially true given Dr. Chen's declaration in which he states that he immediately took steps to ensure treatment of plaintiff's vision condition when he was informed about it (Doc. No. 47-5 at 3), which essentially acknowledges his awareness that complaints about difficulties seeing necessitates further investigation and medical treatment under such circumstances. *See Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994) (observing a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"); *Gibson v. County of Washoe*, 290 F.3d 1175, 1190 (9th Cir. 2002) ("Although direct evidence of a person's mental state rarely exists, it is not always necessary to prove a person's subjective awareness, as this inquiry is 'subject to demonstration in the usual ways, including inference from circumstantial evidence.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016); *Petty v. Shojaei*, No. EDCV 12–1220 JAK (SS), 2013 WL 5890136, at *10 (C.D. Cal. Oct. 31, 2013) (noting that telling prison staff of a medical need was sufficient to allege the subjective component of an Eighth Amendment claim); *Preayer v. Ryan*, No. 15-00069-PHX-DGC (DKD), 2016 WL 5341177, at *12 (D. Ariz. Sept. 23, 2016) ("[T]urning a blind eye to the relevant surrounding facts will not shield a prison official from liability.") (quoting *Swan v. United States*, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001)); *see also Salahuddin v. Goord*, 467 F.3d 263, 282 (2d Cir. 2006) (noting "willful blindness to a risk might suggest awareness of the risk," although "simple blindness does not"); *Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992) (observing that a plaintiff must show a defendant's actual knowledge "or, at least,

3

willful blindness to" the risk of serious harm). Thus, the question of Eighth Amendment liability here turns on whether Dr. Chen was informed of plaintiff's vision problem on June 11, as plaintiff claims, or not until July 28, as defendant Chen claims. That factual dispute cannot be resolved by the court on summary judgment.

Additionally, the magistrate judge recommended defendants be granted summary judgment because there is no evidence before the court on summary judgment suggesting that "the delay in his eye surgery led to further harm to Plaintiff." (Doc. No. 58 at 13.) The findings and recommendations reach this conclusion because plaintiff does not have a qualified expert witness to testify that his resulting eyesight would have been better if surgery had been performed sooner. (*Id.*) This conclusion misses the mark for two reasons. First, as discussed further below, despite how long this action has been pending before the court no discovery has yet been conducted. Second, plaintiff need not prove he would now be able to see had the detached retina surgery been timely performed in order to prevail on an Eighth Amendment deliberate indifference claim. While plaintiff must suffer some harm due to alleged deliberate indifference, it has long been the law that the pain and suffering caused by denied or delayed medical treatment is sufficient to state a claim under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) ("In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . .") (internal citations omitted); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (holding that a prisoner "need not show his harm was substantial"); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that, while a prisoner must show the denial of medical treatment was harmful, there is no requirement that the denial "resulted in 'substantial' harm to the prisoner"), *overruled on other grounds in WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Wood v. Housewright*, 900 F.2d 1332, 1338–40 (9th Cir. 1990) (concluding pain was sufficiently serious harm to constitute an Eighth Amendment claim); *Delker v. Maass*, 843 F. Supp. 1390, 1398–99 (D. Or. 1994) (noting a delay in medical treatment "need not cause permanent injury" in order to be actionable and finding that "needless pain, anxiety, and restricted body function" was

4

sufficient).  Here, in opposing summary judgment plaintiff has submitted a declaration stating that as his vision got worse after his June 11 appointment with Dr. Chen, he had a "real fear of going blind," and that he was "subjected to constant pain" and "blurred vision" through the time in which he was finally seen by an outside ophthalmologist on August 10, 2011 and diagnosed as suffering from a detached retina   (Doc. No. 52 at 11–12.)  This evidence of injury is sufficient to survive summary judgment with respect to plaintiff's Eighth Amendment claim.

Moreover, the granting of summary judgment as to either defendant would arguably be premature at this juncture of the litigation in any event, because no discovery has yet been conducted.  In this regard, on January 29, 2016, the previously assigned magistrate judge issued a discovery order requiring the parties to make initial disclosures and establishing a schedule for the litigation including a discovery cut-off date and dispositive motion filing deadline.  (Doc. No. 22.)  However, at the request of defendants, that order was vacated on March 21, 2016 in anticipation of the filing of defendants' first motion for summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies prior to filing suit.  (*See* Doc. No. 27.)  Defendants also sought and obtained a protective order excusing them from responding to any discovery requests until the motion for summary judgment was resolved.  (Doc. No. 36.)  Defendants' first motion for summary judgment was filed on March 25, 2016, and was ultimately denied by the court's order of March 28, 2017.  (Doc. Nos. 28, 46.)  Defendants' second motion for summary judgment was filed a few weeks later on April 18, 2017.  (Doc. No. 47.)  Unfortunately, no new scheduling order has been issued since the initial scheduling order was vacated and defendants were relieved of the obligation to provide initial disclosures.  Plaintiff notes as much in his opposition to the second motion for summary judgment, stating "[n]o discovery has been accomplished by either side to date."  (Doc. No. 52 at 1.)  Plaintiff has not expressly invoked Rule 56(d) here, but in light of his *pro se* status, the court would deny defendants' second summary judgment motion in any event without prejudice to renewal following the close of discovery.  *See* Fed. R. Civ. P. 56(d) (authorizing the court to defer or deny

/////

/////

5

a motion for summary judgment or allow time to take discovery).[4]

Should yet another motion for summary judgment be filed in this case, the magistrate judge may also address at that time defendants' contention that they are entitled to qualified immunity, which were raised in both summary judgment motions but have not been addressed in either set of findings and recommendations. (*See* Doc. No. 28 at 21; Doc. No. 42; Doc. No. 47-3 at 14; Doc. No. 58.)

Accordingly:

1. The court declines to adopt the January 19, 2018 findings and recommendations (Doc. No. 58);
2. Defendants' second motion for summary judgment filed on April 18, 2017 (Doc. No. 47) is denied; and
3. The matter is referred back to the magistrate judge for the issuance of a scheduling order setting discovery cutoff and dispositive motion deadlines as quickly as is practical so that this action may be advanced toward disposition.

IT IS SO ORDERED.

Dated: **September 11, 2018**

UNITED STATES DISTRICT JUDGE

---

[4] The court also notes that nowhere in his opposition to defendants' motion for summary judgment nor in his objections to the pending findings and recommendation, has plaintiff appeared to oppose the granting of summary judgment in favor of defendant Horton on the basis that he was never called upon to provide medical treatment to plaintiff. Although the court concludes that granting of summary judgment would be premature as to either defendant due to no discovery having been conducted and no discovery deadline having been established, if plaintiff has no factual basis for his claim against defendant Horton, the court would strongly encourage plaintiff to file a notice voluntarily promptly dismissing defendant Horton from the action.